UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CONTRELL PLUMMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 3:20-cv-00950-GCS |
| vs. | ) |
| | ) |
| TIMOTHY ADESANYA, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

INTRODUCTION

Pending before the Court is Defendant Adesanya's motion for summary judgment. (Doc. 51, 52, 69).[1] Plaintiff opposes the motion. (Doc. 65). Defendant Adesanya filed the required Federal Rule of Civil Procedure 56 notice informing Plaintiff of the consequences of failing to respond to the motion for summary judgment and what is required in responding to the motion. (Doc. 53). Based on the reason delineated below, the Court **GRANTS** the motion for summary judgment.

Plaintiff Contrell Plummer is an inmate of the Illinois Department of Corrections ("IDOC") currently housed at Pickneyville Correctional Center ("Pinckneyville"). On September 17, 2020, Plaintiff filed suit pursuant to 42 U.S.C. § 1983 for violations of his

---

[1] The motion for summary judgment was also filed by Defendant Kimberly Richardson. However, she is no longer a party to this case as the Court granted Plaintiff's motion to dismiss the claim against her on September 21, 2022. (Doc. 67).

constitutional rights. (Doc. 1). In his complaint, Plaintiff alleges that Dr. Butalid told Plaintiff during a visit on April 5, 2018, that he would make sure Plaintiff received a BREO inhaler for his wheezing. They discussed Plaintiff's difficulties with getting refill inhalers and different types of inhalers that Plaintiff had been prescribed. Plaintiff told Nurse Kim and other nurses during the treatment line on April 6, 2018, that he was having difficulty breathing. Nurse Kim gave him a breathing treatment and told him to go back to his housing unit. She did not take his vitals, and Plaintiff was still having difficulty breathing. Nurse Kim did not inform the head nurse or call a doctor.

Plaintiff complained about having difficulty breathing during the treatment line on April 7, 2018. He went to the health care unit and saw Nurse Marsha Hill. During a sick call visit, the nurse fills out a progress note, takes your vitals, and determines whether you will see a doctor or nurse practitioner. When Plaintiff asked Hill if he was going to see a doctor, she stated, "no!" Plaintiff insisted on being seen and waited approximately an hour and a half to be seen by Physician Assistant T. Adesanya. After listening to Plaintiff's lungs, Adesanya prescribed Prednisone twice a day. Plaintiff requested something "right now" to stop his wheezing and Adesanya stated, "no!" Plaintiff told Adesanya that his blood oxygen level was 91%. Adesanya responded "you have bronchitis, and I don't know if you are wheezing or that's just the way you breathe." Plaintiff's breathing became "more problematic," but he was sent to his housing unit anyway.

C/O Hunt escorted Plaintiff to his housing unit. Hunt told him to take his time because he could see Plaintiff was in physical distress. Plaintiff wheezed in his cell until

the dinner chow line was called. He could not make it up the stairs to chow. Hunt told Plaintiff to sit in a chair while the chow line was secured. Plaintiff was then taken by wheelchair to the health care unit. Plaintiff's blood oxygen level was 50%. He was given a breathing treatment. The doctor was called, and Plaintiff received additional medication. Plaintiff was also admitted to the infirmary, received breathing treatments every 4-6 hours, and was placed on oxygen. His blood oxygen level was 60, 70, and then 80.

Plaintiff claims that Wexford and its employees have "labeled" him with COPD and have consistently failed to find the cause of his wheezing and the damage to his lungs so that he could be treated. According to Plaintiff, Dr. Butalid, Dr. Myers, PA Adesanya, Nurse Practitioner Bobby Blum and Wexford have reached their level of expertise with his asthma and COPD. This has caused Plaintiff pain and suffering every few months through his asthma attacks and constant wheezing.

After preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on one count. The complaint alleges that on April 7, 2018, Defendant Adesanya was deliberately indifferent in treating Plaintiff's breathing problems related to his asthma and COPD. (Doc. 11, p. 13-14).

Defendant Adesanya argues that he is entitled to summary judgment as Plaintiff cannot set forth any evidence that he was deliberately indifferent to Plaintiff's serious medical needs in treating his breathing difficulties. Plaintiff counters that the evidence shows that Defendant Adesanya was deliberately indifferent to his serious medical needs and exacerbated his asthma and COPD when Defendant Adesanya failed to properly

treat him. Specifically, Plaintiff maintains that after Defendant Adesanya determined he was wheezing and in distress he did not provide him with further medical care.

### UNDISPUTED FACTS

The following facts are taken from the record and presented in the light most favorable to Plaintiff, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

During the relevant times alleged in the complaint, Plaintiff was housed in Pinckneyville. Plaintiff was diagnosed with asthma when he was 1 and ½ years old; he was also diagnosed with COPD in 2010. (Doc. 52-3, p. 20).

On April 6, 2018, Plaintiff saw a nurse on sick call. He complained that his asthma was getting worse despite seeing a doctor on March 5, 2018. He also complained that he did not have his "airbrio." The nurse noted that Plaintiff's respirations were at 20. Plaintiff also was not wheezing and did not have a compromised airway. The nurse placed Plaintiff on the nurse sick call for the next day and instructed him how to use the inhaler.

The next day at 10:00 a.m., Plaintiff was seen in nurse sick call for shortness of breath. The nurse noted that Plaintiff complained of wheezing when he walked, that his respirations were 24, that his pulse was 120/60, that his pulse oximeter was 91, and that his peak flow was 250 times three. Plaintiff was able to complete full sentences without interruption and did not use accessory muscle/retractions. The nurse put in for Plaintiff to be seen by a doctor.

Thereafter, around 2:00 p.m. on April 7, 2018, Plaintiff saw Defendant Adesanya. The medical records note that Plaintiff had a history of COPD. Defendant Adesanya

further noted that Plaintiff had expiratory wheezing (wheezing upon exhale). Defendant Adesanya's analysis was that Plaintiff had exacerbated his COPD. The plan was for Plaintiff to take Prednisone 20 mg twice a day for five days, to continue with all his current medications, and to return to sick call as needed. At that time, Plaintiff was on a rescue inhaler (Xopenex). Plaintiff was also required to take DuoNeb at least twice a day and a steroid inhaler. Plaintiff testified that Defendant Adesanya during this visit "listened to my lungs and he had problem distinguishing am I breathing, like, in a way that's causing the wheezing noise or that it was coming from my lungs." (Doc. 52-3, p. 38, 39).

Prednisone is a corticosteroid that can be used to treat asthma and COPD exacerbations.[2]

At 4:30 p.m., Plaintiff again was seen in health care for complaints of shortness of breath and wheezing by a nurse and Defendant Adesanya. Defendant Adesanya noted that Plaintiff was seen for complaints of difficulty in breathing and shortness of breath. He also noted that Plaintiff had a history of COPD. During this time, Defendant Adesanya observed that Plaintiff was in acute distress. Plaintiff had shortness of breath, nasal flaring, a heart rate at 103, and a respiration rate at 22. Plaintiff's SpO2 was 53%; he also had expiratory wheezing and was excessively breathing through the mouth. Defendant

---

[2] As to Prednisone, Plaintiff testified the following:

Q. Do you know what aspects of asthma it is prescribed to treat?
A. The inflammation that develops in your lungs from the constriction and it clears up, supposed to clear that up. It's a wonder drug, that's what it do, the inflammation.

(Doc. 52-3, p. 40, 41).

Adesanya's analysis was that Plaintiff was having an acute bronchitis attack. Plaintiff was started on a breathing treatment per the standing order and given one tablet of Prednisone at 20 mg. Plaintiff was given DuoNeb and Prednisone. His SpO2 increased to 85-89%. Defendant Adesanya ordered the continuation of O2 at six liters per minute through a Nebulizer. Dr. Butalid was called and informed of the following orders: (1) Plaintiff was placed in the infirmary for 23 hours and (2) his breathing treatments were increased to four times/day from three times/day.

Later that evening at 7:15 p.m., Defendant Adesanya issued further orders as to Plaintiff. Defendant Adesanya ordered Plaintiff's O2 to be changed to two liters per minute through the nasal cannula until Plaintiff stabilized. He also ordered two doses of Solu-Medrol 125 to be given – a present dose and another dose if needed through the night. Defendant Adesanya further ordered that Plaintiff's vital signs be checked twice per shift, including SpO2, and that Plaintiff be reevaluated for the further need of O2. If Plaintiff stabilized, the O2 at two liters per minute could be stopped. If Plaintiff's condition worsened, a doctor was to be called. Otherwise, the doctor would consult with Plaintiff on April 8, 2018. At the time these orders were given, Plaintiff's SpO2 was 94%.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED. R. CIV. PROC. 56(a)). *Accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue

of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-moving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, and as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

## DISCUSSION

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–653 (7th Cir. 2005)(quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (internal quotation marks omitted). *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009)(stating that "deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm—not to demand specific care. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To prevail on such a claim, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part test. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The first prong that must be satisfied is whether the prisoner has shown he has an objectively serious medical need. *See Arnett*, 658 F.3d at 750; *accord Greeno*, 414 F.3d at 653. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994)(violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm.") (internal quotation marks omitted).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *See Greeno*, 414 F.3d at 653. A plaintiff need not show the individual literally ignored his complaint, just that the individual was aware of the serious medical condition and either knowingly or recklessly disregarded it. *See Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Negligence, gross negligence, or even 'recklessness' as that term is used in tort cases, is not enough." *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987) (citation omitted). Also, "mere disagreement with the course of the inmate's medical treatment does not constitute an Eighth Amendment claim of deliberate indifference." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (internal quotations and citations omitted).

For the purposes of this motion, the Court finds that Plaintiff's asthma and COPD are objectively serious medical conditions. However, construing the evidence in the light

most favorable to Plaintiff, the Court finds that there is no evidence in the record to show that Defendant Adesanya was deliberately indifferent to Plaintiff's serious medical conditions.

Based on the record, it cannot be said that Defendant Adesanya acted with deliberate indifference in treating Plaintiff's conditions on April 7, 2018. Overall, the record reveals that Defendant Adesanya provided appropriate medical treatment to Plaintiff throughout the day. Such medical treatment included initially prescribing Plaintiff Prednisone 20 mg twice a day, continuing Plaintiff on his current medications, and ordering Plaintiff to return to sick call as needed. When Plaintiff returned to health care later that day, Plaintiff was given a breathing treatment and one tablet of Prednisone. During this visit, Defendant Adesanya continued the Oxygen at six liters per minute through a Nebulizer. Additionally, Dr. Butalid was called and informed, *inter alia*, of orders such as the increase in breathing treatments to four times/day. Further, that same evening, Defendant Adesanya ordered that Plaintiff's O2 be adjusted to two liters per minute through the nasal cannula until Plaintiff stabilized. Defendant Adesanya also tried different/additional medication by ordering two doses of Solu-Medrol 125 mg (one to be given at the present time and another dose if needed during the night). Finally, Defendant Adesanya ordered that Plaintiff's vitals be checked twice per shift, including SpO2, and that he be reevaluated for the need for O2.

The record clearly shows that Defendant Adesanya provided Plaintiff with continuous and changing treatment in response to the pain/symptoms Plaintiff was experiencing. The treatment simply was not the treatment Plaintiff wanted and/or

demanded at that specific time. Even construing the evidence in the light most favorable to Plaintiff, the Court finds that no reasonable jury could conclude that Defendant Adesanya was deliberately indifferent to Plaintiff's serious medical needs regarding his asthma or COPD. Plaintiff has failed to produce any evidence that could allow a reasonable jury to find in his favor.

## CONCLUSION

Accordingly, the Court **GRANTS** the motion for summary judgment (Doc. 51). The Court **FINDS** in favor of Defendant Timothy Adesanya and against Plaintiff Contrell Plummer. Further, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and close the case.

In an abundance of caution, and noting Plaintiff's *pro se* status, the Court advises Plaintiff as follows. Plaintiff has two means of contesting this order: (1) he may request this Court review this order; or (2) he may appeal the order to the Seventh Circuit Court of Appeals.

If Plaintiff chooses to request this Court to review this order, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). Plaintiff *must* file the motion within twenty-eight (28) days of the entry of judgment; the deadline *cannot* be extended. *See* FED. R. CIV. PROC. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *See Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012)(stating

that a party must establish either manifest error of law or fact, or that newly discovered evidence precluded entry of judgment in order to prevail on a Rule 59(e) motion) (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be tolled. *See* FED. R. APP. PROC. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. *See* FED. R. APP. PROC. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). However, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not toll the time for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transportation, Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819–820 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.

In contrast, if Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal from the entry of judgment or order appealed from *within 30 days*. *See* FED. R. APP. PROC. 4(a)(1)(A) (emphasis added). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. *See* FED. R. APP. PROC. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012)(explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State University*, 667 F.3d 800, 807 (7th Cir. 2011)(explaining the excusable neglect standard).

Plaintiff may appeal to the Seventh Circuit by filing a notice of appeal in this Court. *See* FED. R. APP. PROC. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. *See* FED. R. APP. PROC. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion"). *See* FED. R. APP. PROC. 24(a)(1). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. PROC. 24(a)(1)(C). If Plaintiff is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2).

**IT IS SO ORDERED.**

**DATED: May 3, 2023.**

Digitally signed by Judge Sison
Date: 2023.05.03 14:57:48 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**